WILLIAM HUNTER

*v.*

THE STATE OF ILLINOIS.

*Opinion filed May 10, 1890.*

1. PLEADINGS—*must show what part of lands are injured.* Where damages are claimed for injuries to land caused by overflow of river consequent upon building of dam by the State, claimant in his petition must describe what parts, if not the whole of his lands, are thus injured.

2. STATUTE OF LIMITATIONS—*when claim is not barred.* If claim is filed for damages caused by overflow of river caused by construction of dam by the State within two years after opening of such dam such claim will not be barred by statute of limitations.

Dissenting opinion by E. D. Blinn, President of the Commission.

On the 20th of October, 1879, the claimant filed with the Auditor of Public Accounts of the State of Illinois, his claim against the State for damage to his land and property caused by and incident to the construction of a dam near Copperas Creek in the Illinois river by the State of Illinois, and in which he says the land and property damaged is the east half (E. ½) of the southwest quarter (S. W. ¼) of section sixteen (16), and one hundred and eighty acres out of the center of the north half (N. ½) of Section fifteen and the west half (W. ½) of the southeast quarter (S. E. ¼), and thirty acres off the east side of the northeast quarter (N. E. ¼) of the southwest quarter (S. W. ¼) of said section fifteen, all in town twenty-eight north of range three west of the 3rd P. M., in Woodford county, in the State of Illinois.

Section four of the statute under which the Commission is constituted, in force July 1, 1877, and continued by the act approved June 1, 1889, prescribes that "All persons having claims against the State shall file the same with the Auditor of Public Accounts * * * * and shall file with such claim a statement in writing under oath of the facts upon which such claim is based, setting forth the time when and the place where the

same accrued, * * * * and in all cases the amount of such claim and all other facts necessary to a full understanding of such claim."

A statement in writing signed by said claimant and under oath was filed with said claim and to which said claim was attached.

In this sworn statement the claimant describes all the lands as in said claim heretofore described except that he omits therefrom the east half of the southwest quarter of said section sixteen and omits to state that the one hundred and eighty-nine acres are in the centre of the north half of said section fifteen and describing them only as "one hundred and eighty-nine acres out of the north half of said section fifteen."

The claimant further represents in his said sworn statement that before and since the 20th of October, 1877, he was and has been the undisputed owner of the lands and property fully and particularly described in his claim attached to his written statement; that said lands are situated in the bottoms and low lands bordering upon the Illinois river, and subject to inundation at high water in said river; that of the lands described in said claim attached, two hundred and seventy-five acres, had been farmed to corn and the remainder used for meadow and pasture; that in October, 1877, a dam was constructed across said river near Copperas Creek under the authority of the State, lifting the water in the river opposite said lands from two to three feet; that said river is subject to summer freshets raising the water therein from two to three feet which since said dam was constructed is equivalent to a raise of from four and one half to six feet, and that by reason thereof much of the claimant's lands have become water soaked and soft to such an extent that they no longer bear animals with safety and have become unproductive and liable to frequent destructive overflows and are almost worthless, whereby he had sustained damage to the amount of thirty-nine hundred and forty dollars.

Where damages are claimed for injuries to land

caused by the increased overflow consequent upon the building of said dam we think the claimant in his sworn statement ought to describe what parts, if not the whole, of his lands are thus injured and their height above the original low water mark in said river and that the lands injured should be so described as that they might be identified and their exact boundaries known, and that the proofs should be restricted to the lands described in the claimant's sworn statement and to the manner or cause of injury therein alleged. If this rule were to be followed then we should not consider the lands in section sixteen because the claimant does not include them in his sworn statement, and the one hundred and eighty-nine acres in the north half of section fifteen should not be considered because from the statement of claimant while it is confined to the centre of the north half, its boundaries cannot be ascertained. It might be a strip of land extending east and west through the middle of said north half and wide enough to include one hundred and eighty-nine acres or it might extend north and south through the center of said half section and wide enough to contain one hundred and eighty-nine acres, and it would not necessarily have to be bounded by straight lines, its boundary might be a circle. The description is no better in the sworn statement. It does not require the land to be in any particular part of the said half section. Of the one hundred and ten acres described as lying in the south half of said section fifteen, the claimant claims that thirty acres have been damaged but does not specify in what part of the one hundred and ten acres it is to be found.

The Commission finds from the evidence that the Copperas Creek dam was completed and closed on the 21st day of October, 1877, and that plaintiff's cause of action, if any he has, then accrued, and consequently this claim was filed in apt time. On August the 9th, 1880, the Attorney General filed in the Auditor's office a statement of his defense, one of which is, that the facts stated as the basis of said claim are insufficient to entitle

the claimant to the allowance sought.   On the 7th of
August, 1880, the claimant filed depositions in support
of his claim and on the second of August, 1889, claimant
filed additional depositions.   Depositions taken on the
20th of March, 1890, on behalf of the State, were also
filed and by consent of claimant and the Attorney
General, read on behalf of the State.

The reports of Robert Wilson, a surveyer appointed
by authority of the act in force July 1, 1881, were also
considered.

The evidence is voluminous and in many respects con-
flicting.   As we understand the claimant's evidence he
attempts to show that while his lands do not lie so low
as to be materially injured by the increased overflow
consequent upon the building of said dam yet his said
lands are injured by said dam backing the water up the
mouths of certain creeks flowing from the bluffs through
the bottom lands to the river and in their course passing
near to or through said lands, claiming that said back
water has caused the channels of these creeks to fill up
so that the waters coming down overflow their banks
and spread over the adjacent lands; and further that the
filling up of said creeks has stopped underground drain-
age which used to flow into them and pass away into
the river but which since the filling up of said creeks
now break out and flow over the surface of the lands and
make it miry, wet and cold and unproductive.   It is
contended by the claimant that these creeks only began
to fill up after said dam was constructed and that there
has been an increased and continuous filling up ever
since, yet the claimant insists that his crops were greatly
injured in the years 1878 and 1879 consequent upon
the construction of said dam.   We are satisfied from
the whole of the evidence that the claimant is mistaken,
the evidence satisfying us that said creeks began to fill
up many years before said dam was built, and that its
filling up in after years has neither been caused or
accelerated by said dam, but that its filling up was
caused by drift wood lodging and forming drifts and

obstructions to the flow of the water and trees being cut down and falling into the stream and being allowed to remain, and also from timber being allowed to grow in the stream as it filled, thus obstructing the channel and forming barriers to whatever might be flowing down; and we are also satisfied that the improvement of the country drained by these creeks by being plowed and ditched caused a greatly increased amount of dirt and sediment to be brought down with the high water after heavy rains which settled along the creeks and was held back by the obstructions spoken of. From the evidence these streams must have had a fall of from sixteen to twenty odd feet from the bluffs to their junction with the river, and we do not believe nor can we understand how a permanent raise in the river of from three to four feet at the mouths of these streams could cause them to fill up a distance of two or three miles back to the bluffs.

There is considerable evidence tending to show that these creeks are yet open and of their usual depth at and near to their mouths.

The evidence furnished by the report of the surveyor shows that a line run from east to west through the center of the east half of the southeast quarter of section 16 is fifteen and one-half feet higher than the original low water mark at the river and that there is a great quantity of water discharged from the east over a part of this tract of land, the land lying from one to two miles east of the river.

A line was run east and west through the center of the north half of section fifteen which shows the land to be over twenty feet above the original low water mark, in the lowest place being a little over seventeen feet. The lowest point found on the west half of the southeast quarter had a sag in it, the bottom of which was firm land and nearly sixteen feet higher than the original low water mark; the east thirty acres of the northeast quarter of the southwest quarter of said section fifteen is reported by said surveyor to be nearly all

dry land and fifteen feet above low water mark, and it is on this thirty acres that the claimant in his testimony insists he has been damaged to the extent of fifteen dollars per acre.

After a conscientious consideration of the whole case we are constrained to hold that the claimant is not entitled to any award, and this claim is rejected.

W. S. KAY, Com.

R. D. ADAMS, Com.

I do not concur in the conclusion arrived at in this case by my associates. I think the proofs show that the claimant is entitled to an award as to a part of his land for damages sustained.

E. D. BLINN, Pres. Com.